**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Dimitri Rozenman,<br><br>    Petitioner,<br><br>v.<br><br>David Shinn[1], et al.,<br><br>    Respondents. | No. CV-18-01789-PHX-MTL<br><br>**ORDER** |

Pending before the Court is Magistrate Judge John Boyle's Report and Recommendation ("R & R") (Doc. 56), recommending that the Amended Petition for Writ of Habeas Corpus (Doc. 5) be denied and dismissed with prejudice. Petitioner filed an Objection to the R & R (Doc. 60), in which he also requests a Certificate of Appealability (Doc. 61). Respondents did not file a Response. After considering the R & R (Doc. 56), the Amended Petition (Doc. 5), the arguments raised in Petitioner's Objection (Doc. 60), and Respondents' Limited Answer to Petition for Writ of Habeas Corpus (Docs. 13 and 14), the Court will overrule the Objection and adopt Judge Boyle's recommendation for dismissal of the Petition.[2]

**I.    STANDARD OF REVIEW**

When a federal district court reviews a state prisoner's habeas corpus petition pursuant to 28 U.S.C. § 2254, "it must decide whether the petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Coleman v.*

---

[1] David Shinn, Director of the Arizona Department of Corrections, is substituted for Charles L. Ryan, former Director of the Arizona Department of Corrections, pursuant to Fed. R. Civ. P. 25(d).

[2] On October 17, 2019, Petitioner filed a "Notice Re: Objections to the Magistrate's Report and Recommendation" (Doc. 63) and another Motion for Certificate of Appealability (Doc. 64). These motions are untimely and will not be considered.

*Thompson*, 501 U.S. 722, 730 (quoting 28 U.S.C. § 2254). The Court may not grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in state court proceedings unless the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal Law; or unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). A state court's decision is "contrary to" clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court cases or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003). If more than one state court has adjudicated a claim, the Court must analyze the last reasoned decision by a state court to determine if the state's denial of relief on the claim was clearly contrary to federal law. *See Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). Further, this Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman*, 501 U.S. at 729. This rule applies whether the state law ground is substantive or procedural. *See id*. (citing cases).

When reviewing a Magistrate Judge's R & R, this Court reviews de novo those portions of the report to which an objection is made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When reviewing a habeas claim, the federal courts must afford great deference to the state court's rulings with regard to issues raised in the petitioner's federal habeas action. *See Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (noting the "highly deferential" standard for evaluating state-court rulings, which demands that "state-court decisions be given the benefit of the doubt"). A determination of factual issues made by a state court shall be presumed to be correct and the applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Solis v. Garcia*, 219 F.3d 922, 926 (9th Cir. 2000).

## II. PETITIONER'S FACTUAL OBJECTIONS

The R & R sets forth the following facts, which were taken directly from the Arizona Court of Appeals' memorandum decision affirming Petitioner's convictions:

> A grand jury indicted [Petitioner] in June 2009 on one count of conspiracy to commit first-degree murder, and one count of criminal damage of between $2,000 and $10,000, a domestic violence offense, charges stemming from damage to the vehicles of his ex-wife and her family and a plot to murder them. Following a trial in 2010, a jury convicted [Petitioner] of the charged offenses. The trial court granted a new trial on the ground that the state had failed, albeit inadvertently, to properly disclose to [Petitioner] one of the surveillance recordings of a February 13, 2009 meeting to discuss the murder conspiracy, the so-called Hawk recording.[3]
>
> . . .
>
> The trial court later denied [Petitioner]'s motion for new trial, which raised numerous issues relating to the four-month delay by police in impounding the recordings of surveillance and a confrontation call, and the admission of those and other recordings at trial. The trial court found it had no jurisdiction to decide [Petitioner]'s late-filed motion to vacate judgment, in which [Petitioner] argued that the testimony before and at trial of the investigating officers showed that they conspired to obstruct justice by deliberately concealing the existence of the Hawk recording. The court concluded, however, that if it had jurisdiction over the motion to vacate judgment, it would deny it.
>
> . . .
>
> The evidence demonstrated that in 2008 [Petitioner] hired L.N. at his cigar business. L.N. testified that [Petitioner] regularly complained about his wife and was angry she refused to sign a postnuptial agreement to accept $50,000 in the event of a divorce. L.N. also stated that [Petitioner] told him that if he and his wife "were still back in Russia, that she would be dead or they would kill her."
>
> [Petitioner] served his wife with divorce papers in March 2008, and directed L.N. to move her belongings to her parents' house. One night in October 2008, L.N. saw [Petitioner] puncture the tires of three vehicles belonging to his wife's family, and pour sugar into the gas tank of one of them. The repairs

---

[3] Petitioner was convicted by a jury at the second trial. After that jury returned its verdict, Petitioner moved for a new trial, which the trial court denied. *See State v. Rozenman*, 1 CA-CR 13-0458, 1 CA-CR 13-0898, ¶¶ 6, 7 (Ariz. App. Jan. 29, 2015) (mem.) (attached as Doc. 14-9, Exhibit DDD).

cost in excess of $2,000.

When the divorce decree ordering [Petitioner] to pay his wife approximately $500,000 was issued in late January 2009, [Petitioner] was "incoherent and really upset," and told L.N. he wished his ex-wife were dead. Sometime after that, L.N. testified, [Petitioner] approached him and proposed a plan whereby L.N. would hire people to force his ex-wife to sign a paper agreeing to relinquish all money awarded in the divorce decree, and then kill her and her family. [Petitioner] offered to pay L.N. $70,000 in installments, and later gave L.N. $5,000 in cash.

L.N. ultimately told [Petitioner]'s ex-wife of the plot, and agreed to allow police to hide video and audio recorders on him for a meeting L.N. arranged with [Petitioner] for the night of February 13, 2009. During the meeting, L.N. told [Petitioner] that his ex-wife had signed the documents, and she and her family had been bound up "execution style" and had been beaten. L.N. told [Petitioner] he was not going to give [Petitioner] "details of how they're gonna murder them," and talked about "hit guys," and when they would "go and shoot them people." [Petitioner] gave L.N. $500 in cash to get the hit men out of town. [Petitioner] indicated by nodding that all he wanted L.N.'s men to do was kill the ex-wife and her family, and he would handle disposing of the hit men. During that meeting, [Petitioner] never told L.N., "you're scaring me," threatened to call police, or called him crazy.

In a recorded confrontation call six days later, L.N. told [Petitioner] that his ex-wife and her parents were dead, to which [Petitioner] immediately asked L.N. when he was going to return to work. [Petitioner] did not call 9–1–1 that night to report that he had just been told his ex-wife and her family had been murdered.

When police called on [Petitioner] at his girlfriend's apartment early the next morning and told him about the "murders," and repeatedly asked him if he knew who might have done this, [Petitioner] never mentioned L.N. Police arrested [Petitioner] and served him later that day with a protection order from his ex-wife, and told him that his ex-wife and her family were safe. At that time, [Petitioner] told police that he was concerned that hit men hired to commit the murders might come looking for him.

(Doc. 60 at 1-3) (quoting *State v. Rozenman*, 1 CA-CR 13-0458, 1 CA-CR 13-0898, ¶¶ 5, 7, 10-15 (Ariz. App. Jan. 29, 2015) (mem.).

Petitioner makes numerous specific objections to the factual findings in the R & R.

1. First, Petitioner objects to the R & R's assertion that Petitioner is Russian,

- 4 -

claiming instead that he is "Ukrainian from Kiev, Ukraine." (Doc. 60 at 1.) The R & R, however, did not state that Petitioner was Russian. The R & R recounts testimony from L.N. wherein *L.N. said* "[Petitioner] told him that if [Petitioner] and his wife 'were still back in Russia, that she would be dead or they would kill her.'" (Doc. 56 at 2.) Though irrelevant, Petitioner's first factual objection is overruled.

2. Second, Petitioner objects to the factual assertion in the R & R that "[Petitioner] offered to pay L.N. $70,000 in installments, and later gave L.N. $5,000 in cash." (Doc. 60 at 1.) The sole basis for Petitioner's objection is that this factual finding was derived from the "uncorroborated testimony of [L.N.]." (Doc. 60 at 1-2.) It is not the province of the federal habeas court to re-weigh the evidence or re-determine the credibility of witnesses whose demeanor has been observed by the finder of fact. *See, e.g.*, *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (stating "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). The record amply supports the factual finding that Petitioner offered to pay L.N. $70,000 in installments and later gave L.N. $5,000 in cash, and Petitioner has not met his burden of demonstrating by clear and convincing evidence that the factual finding is incorrect. *See* (Doc. 13-5, Exhibit Q, R.T. 03/05/2013, at 133, 140) (L.N. testifying that Petitioner offered him $70,000 for the "whole project" and gave him $5,000).

3. Third, Petitioner objects to the factual finding that he "gave L.N. $500 in cash to get the hit men out of town." (Doc. 60 at 2.) For this objection, Petitioner references his Amended Habeas Petition, which challenges this factual finding because it was "based on the uncorroborated testimony of [L.N.]." (Doc. 60 at 2) (citing (Doc. 5 at 25).) The Court will not re-determine credibility of L.N. The record amply supports this factual finding and Petitioner has not met his burden of demonstrating by clear and convincing evidence that it is incorrect. *See* (Doc. 13-5, Exhibit Q, R.T. 03/05/2013, at 164) (L.N. testifying that Petitioner gave him $500 to get the hit men back to Kentucky).

4. Fourth, Petitioner objects (Doc. 60 at 2) to the factual finding that, during a

recorded conversation with L.N., Petitioner "indicated by nodding that all he wanted L.N.'s men to do was kill the ex-wife and her family, and he would handle disposing of the hit men." Petitioner asserts L.N. actually testified that Petitioner had only nodded in agreement to two of L.N.'s statements, neither of which had to do with Petitioner agreeing to kill the hit men. (Doc. 60 at 2.) The record belies Petitioner's assertion. At trial, L.N. testified on direct examination that Petitioner nodded in agreement to L.N.'s statement that Petitioner would have somebody else "take out" the alleged hit men. (Doc. 13-5, Exhibit Q, R.T. 03/05/2013, at 165, 167.) Petitioner, who represented himself, asked L.N. numerous questions on cross-examination about the statements to which Petitioner nodded during their recorded conversation. (Doc. 13-8, Exhibit V, R.T. 03/18/2013, at 117-124.) And L.N. consistently testified that Petitioner nodded in agreement to L.N.'s statement that Petitioner would "take care of" the hit men. (*Id*. at 122, 128.) Petitioner has not met his burden of showing by clear and convincing evidence that this factual finding is incorrect.

5. Fifth, Petitioner objects (Doc. 60 at 2) to the factual finding that "[d]uring the meeting [with L.N., Petitioner] never told L.N. 'you're scaring me,' threatened to call police, or called him crazy." He challenges this factual finding by disputing the reliability of the recordings, which were played for the jury. Again, it is not the province of the federal habeas court to re-weigh the evidence or re-determine the credibility of witnesses. Petitioner has not met his burden of showing that this factual finding is incorrect.

6. Sixth, Petitioner objects (Doc. 60 at 2) to the factual finding that when L.N. told Petitioner in a recorded confrontation call that Petitioner's ex-wife and her parents were dead, Petitioner asked L.N. when he was going back to work instead of calling 911 to report that his ex-wife and her family had been murdered. Petitioner challenges this factual finding by repeating his dispute about the reliability of the recordings. For the reasons stated above, the Court will not reweigh the credibility of the evidence. Petitioner has not met his burden of showing that this factual finding is incorrect.

7. Seventh, Petitioner objects (Doc. 60 at 2) to the factual finding that Petitioner told police after he was arrested and served with a protection order that "he was concerned

that hit men hired to commit the murders might come looking for him." *See* (Doc. 13-10, Exhibit Y, R.T. 03/25/2013, at 76) (detective testifying about Petitioner's statements). The basis of Petitioner's objection is the absence of a recording to corroborate the detective's statements at trial. (Doc. 60 at 3.) Petitioner has not met his burden of demonstrating by clear and convincing evidence that this factual assertion was incorrect; the record amply supports it and the Court will not engage in any redetermination of the detective's credibility.

8. Eighth, Petitioner objects to the R & R because it fails to mention that "on recordings of surveillance Petitioner's responses to have his ex-wife murdered are entirely inaudible." (Doc. 60 at 3.) The R & R adequately clarifies that Petitioner "indicated by nodding." (Doc 56 at 2.) Petitioner's objection is meritless.

9. Ninth, Petitioner objects to the R & R because it "fails to mention that there isn't a single piece of evidence that cannot be not attributed to malfeasance of the officers." (Doc. 60 at 3.) Petitioner's objection again invites the Court to reweigh the credibility of witnesses and the evidence, which the Court declines to do.

10. Tenth, Petitioner asserts that the R & R "fails to acknowledge that there is more to this story than meets the eye." (Doc. 60 at 3.) In this objection, he points to "evidence of collusion" between L.N. and his ex-wife, which the jury already rejected when it convicted him. *See* (Doc. 14-6, Exhibit PP, R.T. 04/25/2013, at 18) (Petitioner arguing to the jury that L.N. and his ex-wife framed him). The Court will not reweigh the credibility of the witnesses or the evidence. Petitioner has not met his burden of demonstrating by clear and convincing evidence the facts outlined in the R & R are incorrect.

11. Eleventh, Petitioner objects to the procedural history outlined in the R & R because it: (1) "does not clarify that no expert witness testimony was presented on direct appeal" (Doc. 60 at 3); (2) because it "omits that Petitioner requested" in his Rule 32[4] Petition to present testimonies of "experts" regarding the applicability of Phoenix Police

---

[4] Ariz. R. Crim. P. 32.

Department's Operations Order 8.1 to undercover recordings (Doc. 60 at 4); (3) because it omits the fact that Petitioner presented the Rule 32 court with an affidavit explaining "how easily each one of the recordings could have been altered" (*id*.); and (4) because it omits the fact that Petitioner requested this Court to either take judicial notice of Order 8.1 or hold an evidentiary hearing regarding its application. (Doc. 60 at 5). As revealed below, these procedural facts are irrelevant to the Court's federal habeas review and the Court will not amend the R & R to include them.

After de novo review of the factual objections raised in Petitioner's Objection (Doc. 60), the Court agrees with the findings of fact made by the Magistrate Judge in his R & R. However, the Court adds the following factual recitation from paragraph 6 of the Arizona Court of Appeals' memorandum decision, affirming Petitioner's convictions, into its Order adopting the R & R:

> [Petitioner] represented himself at the second trial, and a jury again convicted him of the charged offenses. The trial court sentenced [Petitioner] to life with possibility of parole after 25 years for the conviction on conspiracy to commit first-degree murder, and a concurrent sentence of 2 years on the criminal damage conviction.

*See Rozenman*, 1 CA-CR 13-0458, 1 CA-CR 13-0898, ¶ 6 (attached as Doc. 14-9, Exhibit DDD).

### III. DISCUSSION OF PETITIONER'S AMENDED HABEAS PETITION

The Amended Habeas Petition (Doc. 5) raises six grounds for relief: (1) Petitioner alleges that his Fourteenth Amendment rights were violated due to a failure to preserve evidence; (2) he claims that his Fourteenth Amendment rights were violated when the Phoenix Police Department committed a *Brady*[5] violation; (3) he argues that his Fourteenth Amendment rights were violated based on "the Law of the Case Doctrine"; (4) he claims that his Sixth Amendment rights were violated based on the "Compulsory Process Clause"; (5) he alleges that his Fourteenth Amendment rights were violated based on the results of a "Professional Service Bureau Internal Affairs" investigation; and (6) he asserts that his Fourteenth Amendment rights were violated when the prosecutor used perjured testimony.

---
[5] *Brady v. Maryland*, 373 U.S. 83 (1963).

Except for various arguments raised by Petitioner in Ground Three, which the Magistrate Judge found were procedurally defaulted,[6] the R & R concludes that the Petition should be dismissed for lack of merit. (Doc. 56 at 16-17, 23.) Petitioner objects (Doc. 60) to the R & R's conclusions on Ground One, Two, and Four. The Court addresses each objection in turn.

### A. Ground One—Non-Preservation of Evidence in Bad Faith

In Ground One of his Amended Habeas Petition, Petitioner alleged that his Fourteenth Amendment rights were violated by the State's failure to preserve the recordings of conversations between him and L.N. (Doc. 5 at 6.) Petitioner argues that there was "bad faith" in the non-preservation of the recordings, which he maintains is proved by the detective's failure to properly impound the recordings of Petitioner's conversations with L.N., and by the State's concealment of Phoenix Police Department's Order 8.1 (which Petitioner claims obligated the detective to impound the recordings on the day they were made). (Doc. 5 at 6, 39-40.) The R & R addresses Ground One on the merits, finding that: (1) Petitioner's claim "that the police failed to follow their policies is not a cognizable claim on habeas review" (Doc. 56 at 10); and (2) the state-court's Post-Conviction Relief ("PCR") ruling was not an unreasonable application of federal law under *Youngblood*[7] because Petitioner presented no evidence that the recordings were actually tampered with or destroyed. Petitioner raises the following objections to the R & R's disposition of Ground One.

---

[6] A state prisoner must exhaust a federal habeas claim in the state courts before the District Court may grant relief on the merits of the claim. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). To properly exhaust a federal habeas claim, the petitioner must fairly present the claim to the state's highest court in a procedurally correct manner. *Rose v. Palmateer*, 395 F.3d 1108, 1110 (9th Cir. 2005). In non-capital cases arising in Arizona, the "highest court" test of the exhaustion requirement is satisfied if the petitioner presented his claim to the Arizona Court of Appeals, either on direct appeal or in a petition for post-conviction relief. *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999). The R & R concludes that Petitioner's "Law of the Case" arguments under Ground Three were not presented in the state courts and therefore are procedurally defaulted. (Doc. 56 at 17.) Petitioner does not object to this finding, and the Court therefore adopts this portion of the R & R without further analysis.
[7] *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988) (failure by the government to preserve potentially useful evidence constitutes a denial of due process of law if a criminal defendant can show bad faith on the part of the police).

1. Petitioner objects (Doc. 60 at 5-6) to the R & R's finding (Doc. 56 at 10) that Petitioner's claims regarding the detective's alleged failure to follow policies and the alleged concealment of such policies are not cognizable claims on habeas review. Petitioner argues that this finding misstates his argument. According to Petitioner, his arguments about the detective's alleged failure to follow policies and the alleged concealment of the policies were meant to "prove bad faith" under *Youngblood*, not to stand alone as a substantive argument. (Doc. 60 at 5.) Because the R & R additionally addresses Petitioner's arguments in the context of "proving bad faith" under *Youngblood* (*see* Doc. 56 at 10-12), Petitioner's objection is overruled.

2. Petitioner additionally objects to the R & R's ruling on Ground One because he argues that it mischaracterizes his claim about the policies as a state-law claim. (Doc. 60 at 6.) As discussed above, the sole claim characterized in the R & R as a state-law claim is Petitioner's assertion that the officers failed to follow their policies. (Doc. 56 at 10.) To the extent Petitioner raised an independent claim regarding the officers' adherence to departmental policies, the Court agrees that such a claim is not cognizable on federal habeas review. The objection is overruled.

3. As a threshold matter, the R & R finds that the state-court on PCR review properly rejected Petitioner's *Youngblood* claim because Petitioner failed to prove that any evidence was destroyed. (Doc. 56 at 11.) Petitioner maintains in his Objection (Doc. 60 at 6) that the R & R incorrectly states the holding of *Youngblood*, and that *Youngblood* does not require the criminal defendant to prove that the destroyed evidence had apparent exculpatory value before it was destroyed. (Doc. 60, at 6.) Petitioner's objection misses the mark. As the R & R correctly identifies, without proof of destroyed (or non-preserved) evidence, *Youngblood* is inapposite. The objection is overruled.

4. The R & R references Petitioner's argument about tampered evidence, which he raised on direct appeal and in Rule 32 post-conviction proceedings, to show why Petitioner's argument about "bad faith" was irrelevant. (Doc. 56 at 11.) Petitioner's objects to the R & R's reference to Petitioner's claim about tampered evidence because

Petitioner maintains that he abandoned that argument in earlier proceedings. (Doc. 60 at 6.) Because the non-existence of tampered or destroyed evidence was crucial to the state-court's *Youngblood* analysis, the R & R properly addresses "tampered evidence." The objection is overruled.

5. Petitioner claims in his fifth objection to the R & R's ruling on Ground One that the R & R incorrectly interprets *Youngblood* to require proof of destruction of evidence. (Doc. 60 at 6-7.) Because a *Youngblood* analysis is only triggered where the defendant can point to some "loss of evidence," however—which may occur where the government fails to preserve evidence *or* destroys it, *see Youngblood*, 488 U.S. at 57—the R & R properly concludes that the state-court's PCR ruling was not an unreasonable application of clearly established federal law. (*See* Doc. 56 at 11) (quoting Doc. 14-11, Exhibit NNN, at 113) (state-court denying relief on Petitioner's *Youngblood* claim because it found that "[a]t no time has [Petitioner] been able to establish…the failure to preserve evidence."). The objection is overruled.

6. In finding that the state court properly found no proof of lost evidence, the R & R notes that "[b]oth the State's and Petitioner's forensic experts testified that there was no evidence of tampering in respect to the recordings." (Doc. 56 at 12.) Petitioner objects to this factual finding, asserting (Doc. 60 at 7) that the State's audio expert "impeached himself [on cross-examination] by admitting that in 4 months['] time all of the recordings *could* have been altered and the Hawk recording, if altered, would have wrong dates, and that the date in Hawk shows that surveillance took place in the year 1899." (emphasis added). But whether the recordings *could* have been altered is a distinct question from whether there was actually loss of evidence that would trigger a *Youngblood* analysis. The Rule 32 state court found that there were no indicia that the recordings had been tampered with or altered.[8] Petitioner has not met his burden of showing that the state

---

[8] In rejecting Petitioner's argument on direct appeal that the recordings should have been excluded because they "*could* [have been] subject to tampering," the Arizona Court of Appeals also noted that Petitioner's expert could not say that there had been alterations in the recordings. *Rozenman*, 1 CA-CR 13-0458, 1 CA-CR 13-0898, ¶ 28 n.4 (emphasis in original). The Arizona Court of Appeals further noted after its independent review of the header on the Hawk recording that the header did not show an erroneous date of 1899. *Id.*

- 11 -

court's determination regarding the lack of lost evidence was based on an unreasonable determination of facts in light of the evidence presented in state court. The objection is overruled.

      7. Finally, Petitioner objects to the R & R's conclusion under Ground One because it fails to mention "the explanations that [detectives] provided for why the recordings were not impounded." (Doc. 60 at 8.) Petitioner maintains (Doc. 60 at 10) that the detectives perjured themselves at trial regarding their reasons for not impounding the recordings after every shift and that the detectives' conduct violated Phoenix Police Department Operations Order 8.1. Because the R & R properly concludes (Doc. 56 at 11) that there is no proof of lost evidence, any bad faith on the part of the detectives is irrelevant. The detectives' alleged noncompliance with Operations Order 8.1 is not proof of lost or tampered evidence. The objection is overruled.

### B. Ground Two—*Brady* violation for withholding Order 8.1

In Ground Two of his Amended Habeas Petition, Petitioner alleges (Doc. 5 at 7, 52) that the prosecution's "failure" to disclose Phoenix Police Department Operations Order 8.1 constitutes a violation of *Brady v. Maryland*. To establish a *Brady* violation, the defendant must demonstrate: that the suppressed evidence was favorable to him; that the evidence was suppressed by the government either willfully or inadvertently; and the evidence is material to the guilt or innocence of the defendant.[9] *United States v. Jernigan*, 492 F.3d 1050, 1053 (9th Cir. 2007). Evidence is material under *Brady* "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469-470 (2009). The R & R concludes (Doc. 56 at 13-14) that the state court's PCR ruling was not an unreasonable application of federal law because Operation Order 8.1 was publicly available to Petitioner

---

Petitioner does not even attempt to refute these factual findings because he incorrectly believes that the question turns on whether "recordings is [sic.] a type of evidence that *could* have been tampered with," not whether there was actually lost evidence. (Doc. 5 at 57) (emphasis added).

[9] The Court rejects the portion of the R & R's citation to *United States v. Jernigan*, 492 F.3d 1050, 1053 (9th Cir. 2007), which states that the evidence must be material to the guilt or innocence of *the victim*. (Doc. 56 at 13.)

at the time of his trial, and that therefore, it was not "suppressed" by the prosecution.

      1. Petitioner objects to the R & R's conclusion under Ground Two, asserting that it fails to address his argument about the "state's sound expert . . . not perform[ing] the authentication analysis . . . ." (Doc. 60 at 11.) Petitioner asserts that because the state court did not address the lack of authentication, it did not properly consider a "reasonable probability of a different outcome." (*Id.*) But the fact that the State's sound expert did not perform an "authentication analysis" does not establish proof of suppressed evidence under *Brady*. (*See* Doc. 13-7, Exhibit U, R.T. 03/14/2013, at 79-80) (State's expert testifying that manipulating the 3GP file would have been easy to do, but obvious to detect; whereas the proprietary format of the Hawk recording makes it impossible to edit without the manipulations becoming obvious). The state court's PCR ruling is not based on an unreasonable determination of the facts in light of the evidence presented in state court. The objection is overruled.[10]

      2. Petitioner also objects (Doc. 60 at 12) to the R & R's conclusion that Order 8.1 was publicly available. He claims that he failed to discover Order 8.1 prior to trial because he relied to his detriment on the detectives' pretrial assertions that they were not aware of any guidelines for impounding recordings. (Doc. 60 at 13.) And he likens Order 8.1 to the non-disclosed personnel records of the testifying officer in *Milke v. Ryan*, 711 F. 3d 998, 1017-18 (9th Cir. 2013), where the Ninth Circuit vacated the defendant's convictions because it found that the State suppressed personnel records in violation of *Brady*. (Doc. 60 at 12.) Preliminarily, the Court notes that the Phoenix Police Department's Operational Orders are available online, accessible instantaneously to anybody with just a few clicks of the mouse.[11] This is a far cry from the personnel records that purportedly took "a team of approximately ten researchers [in *Milke*] . . . nearly 7000

---

[10] Petitioner also argues in this objection (Doc. 60 at 12) that it "was objectively unreasonable, for the Rule 32 Court, to extend *Brady* beyond the 3 components in the holdings of *Strickler*, 527 U.S. at 281-82" but he does not identify with specificity how the state court purportedly expanded *Brady*. The Court therefore does not address this objection.

[11] https://www.phoenix.gov/policesite/Documents/operations_orders.pdf (last visited November 12, 2019).

hours sifting through court records" to find. *See Milke*, 711 F.3d at 1018. Because there was no suppression of Order 8.1 by the State, the R & R correctly finds that the state court's denial of post-conviction relief was not based on an unreasonable application of federal law.[12]

3. Petitioner argues (Doc. 60 at 13) that the R & R incorrectly cites the location of the state court's PCR ruling in the record. The state court's PCR ruling is attached to Petitioner's Amended Habeas Petition (Doc. 5 at 118) and to Respondent's Limited Answer to Petition for Writ of Habeas Corpus (Doc. 14-11, Exhibit NNN). The Court amends the R & R's citation (Doc. 56 at 14, lines 3-4) to the state court's ruling to: (Doc. 14-11, Exhibit NNN). The misplaced citation in the R & R is immaterial, however, and the objection is overruled.

4. Petitioner objects (Doc. 60 at 13-14) to the R & R's statement that "Order 8.1 is not exculpatory because the Police Department's internal procedure is not evidence that incriminated Petitioner." (Doc. 56 at 14.) Petitioner argues that, had the jurors known "that detectives violated rules for preservation of evidence . . . they would have made a reasonable inference that the reason why detectives violated Order 8.1 is because the recordings, had they been properly preserved, would have exculpated the Petitioner." (Doc. 60 at 14.) The Court agrees with Respondent (Doc. 13 at 26-27) that Order 8.1 does not clearly apply to police property, such as recordings. In any event, because the state court found no evidence that the tapes were altered, (Doc. 14-11, Exhibit NNN, at 113), the R & R correctly concludes that whether the officers adhered to Order 8.1 is not material to Petitioner's guilt or innocence. The objection is overruled.

5. Petitioner objects (Doc. 60 at 14) to the R & R's statement that "the jury heard any impeaching evidence 'concern[ing] the four-month delay in impounding the tapes.'" (Doc. 56 at 14.) Petitioner misreads this statement as a finding by the Magistrate

---

[12] The state court also found by implication that Petitioner failed to exercise due diligence in discovering Order 8.1, which is an independent state law ground sufficient to support the judgment. (Doc. 14-11, Exhibit NNN) ("He has cited alleged 'new evidence' in his Rule 32 filings, but he has failed to establish a colorable claim that this evidence meets the clear requirements of Rule 32.1(e)."); Ariz. R. Crim. P. 32.1(e)(2) (requiring defendant to show that he exercised due diligence in discovering new facts).

Judge that the jury knew about Order 8.1. The R & R correctly notes that the jury heard about the *four-month delay in impounding the recordings* (not Order 8.1) before it convicted Petitioner. Because the R & R does not imply that the jury knew about Order 8.1, the objection is overruled.

    6. Lastly, Petitioner argues that the R & R incorrectly states his burden of proof and incorrectly cites 28 U.S.C. § 2254(d)(2). (Doc. 60 at 15.) The R & R correctly notes that it is Petitioner's burden to show that the state court's ruling was unreasonable, either because it resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law; or, because it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1), (2). The R & R also correctly finds that Petitioner failed to meet his burden of proving that the state court ruling was clearly unreasonable under 28 U.S.C. § 2254(d). (Doc. 56 at 23.) The objection is overruled.

### C. Ground Four—Compulsory Process

In Ground Four of his Amended Petition, Petitioner alleged that the trial court, in violation of his Sixth Amendment rights, improperly prevented the attorney who represented him during the first trial from testifying at the second trial to establish that the lead detective had originally mislead the defense as to the existence of the Hawk recording. (Doc. 5 at 9, 84-93.) The Compulsory Process Clause of the Sixth Amendment provides that "[i]n all prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend VI. The right to compulsory process encompasses the right to offer the testimony of witnesses and to compel their attendance if necessary. *Soo Park v. Thompson*, 851 F.3d 910, 919 (9th Cir. 2017) (citing *Washington v. Texas*, 388 U.S. 14, 18-19 (1967)).

The trial court precluded the proffered testimony from Petitioner's first counsel because it found that there was no evidence to suggest any concerted misconduct by law enforcement to conceal evidence. (Doc. 14-5, Exhibit NN, at 125.) The trial court allowed Petitioner, however, to question the investigating officers about whether they had

intentionally misled him as to the existence of the Hawk recording. (Doc. 14-9, Exhibit DDD, at 11, ¶ 35.) The Arizona Court of Appeals found that the trial court did not err in imposing the limits it did on Petitioner's presentation of his case. (*Id.*)

The R & R concludes that the Arizona Court of Appeals' decision was not an unreasonable application of Federal law because "Judges are afforded 'wide latitude' to exclude evidence that is 'repetitive[,] . . . only marginally relevant[,]' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'" (Doc. 56 at 20) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). The R & R concludes that the subjective opinion of Petitioner's first counsel would have added little to the jury's understanding of the central issues. (Doc. 56 at 20.)

1. Petitioner objects to the R & R's conclusion under Ground Four because he states that it "fails to rebut [his] argument that the Court of Appeals' decision was an objectively unreasonable application of clearly established federal law." (Doc. 60 at 15.) The R & R adequately cites federal law that accords the trial judge discretion to exclude evidence that would confuse the jury, without violating the Compulsory Clause of the Sixth Amendment. (Doc. 56 at 20.) The objection is overruled.

2. Petitioner also objects to the R & R's conclusion under Ground Four because he claims that it "asserts that credibility of DW 'was only marginally relevant.'" (Doc. 60 at 16.) The R & R, however, finds that testimony of *Petitioner's first counsel* would have been marginally relevant. The R & R makes no claims under Ground Four regarding the relevancy of DW's testimony. The objection is overruled.

**D. Certificate of Appealability**

Petitioner alternatively asks the Court (Doc. 60 at 17) to issue a certificate of appealability. Petitioner must obtain a certificate of appealability before he may appeal this Court's judgment. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1); Rule 11(a) of the Rules Governing Section 2254 Cases. This Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing Section 2254 Cases. A certificate of appealability may only issue when the

petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). With respect to claims rejected on the merits, a petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Petitioner asks the Court to issue a certificate of appealability because he claims he "has made a substantial showing of denial of a constitutional right." (Doc. 60 at 17.) Upon review of the record, the Court disagrees.

Accordingly, having reviewed Petitioner's objections,

**IT IS ORDERED** that the Report and Recommendation (Doc. 56) is adopted as modified herein.

**IT IS FURTHER ORDERED** that the Amended Petition for Writ of Habeas Corpus (Doc. 5) is denied and dismissed with prejudice.

**IT IS FURTHER ORDERED** denying Petitioner's request for a Certificate of Appealability (Doc. 61.) A Certificate of Appealability shall not issue, as the resolution of the petition is not debatable among reasonable jurists.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to enter judgment.

Dated this 21st day of November, 2019.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge